Linda J. Johnson
Assistant Municipal Attorney
Municipal Attorney's Office
P.O. Box 196650
Anchorage, Alaska 99519-6650

Phone: (907) 343-4545
Email: uslit@muni.org

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| BRENDA BOUDREAU, | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) |
| MUNICIPALITY OF ANCHORAGE, *et al.*, | ) |
| Defendants. | ) Case No. 3:23-cv-00164-SLG |

MOTION TO DISMISS OFFICERS

Defendants Sgt. Marvin Weinrick, Jr, Officer Christopher Tyler Hall, Officer Kaden Pohl, and Officer Dustin Boynton (Officers) move for an order dismissing the claims for a failure to state a claim upon which relief can be granted, as found in Fed. R. Civ. P. 12(b)(6), and because the Officers are entitled to qualified immunity. Brenda Boudreau's (Boudreau) Third Amended Complaint, supporting documents and prior filings in this case make it clear that the Officers were justified in stopping Boudreau for a traffic violation and requesting she produce a valid drivers' license, and then seeking to arrest her. After fifteen minutes of attempting to gain compliance, she was still barricaded inside her truck

with a passenger and refused to produce her driver's license and refused to comply with the Officer's orders. Officers ultimately blocked in her vehicle so she could not drive away, broke the driver's side window, opened the driver's door, and extracted and handcuffed Boudreau in order to arrest her. None of the actions taken by the Officers were unreasonable and indeed none were violative of a clearly established law. The Court should dismiss Boudreau's Third Amended Complaint, Counts I and IV[1] against the Officers.

I. STANDARD.

A. Motion to Dismiss Standard.

Fed. R. Civ. P. 12(b)(6) permits a party to seek dismissal of a complaint for "failure to state a claim upon which relief can be granted." In order to survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009), quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007). The U.S. Supreme Court stated in *Ashcroft*, 556 U.S. at 679 that a court is not required to accept conclusions and speculation in adjudicating a motion to dismiss. A complaint's claims are plausible when the pleaded facts "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

In considering a motion to dismiss, the Court must accept a complaint's well pleaded factual allegations as true and draw all reasonable inferences in the light most favorable to a plaintiff like Boudreau. *Adam v. U.S. Forest Service*, 671 F.3d 1138, 1142-

---

[1] Counts II and III are specified as only alleged against the Municipality of Anchorage, which has been dismissed pursuant to the Court's Order at Docket 38. Therefore, the Officers will not address those claims in this motion.

Motion to Dismiss Officers
*Boudreau, Brenda v MOA - APD*; Case No. 3:23-cv-00164-SLG
Page 2 of 19
Case 3:23-cv-00164-SLG   Document 44   Filed 06/17/25   Page 2 of 19

43 (9th Cir. 2012). However, the trial court does not have to accept as true "conclusory allegations in a complaint or legal claims asserted in the form of factual allegations." *In re Tract Gut, LLC,* 836 F.3d 1146, 1150 (9th Cir. 2016). Further, the Court is not required to accept as true any allegation that is clearly contradicted. See *Acosta v. City of Costa Mesa,* 718 F.3d 800, 826 (9th Cir. 2013). The U.S. Supreme Court has determined that on a motion to dismiss, review is limited to the complaint, materials incorporated into the complaint by reference and matters of which the court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). *See also Karasek v. Regents of the Univ. of Cal.*, 956 F.3d 1093, 1104 (9th Cir. 2020) (The Court should consider only "the complaint, materials incorporated into the complaint by reference and matters of which the court may take judicial notice.")

### B. When Material Not Attached to the Complaint May Be Considered.

Materials not submitted as part of the complaint may be considered as part of a Rule 12(b)(6) motion in certain circumstances. In a motion to dismiss, a defendant "may seek to incorporate a document into the complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (quotation marks omitted). In those circumstances, such a document is treated as part of a complaint itself, and its factual material may be evaluated along with the allegations in a complaint to determine whether the plaintiff has stated a claim on which relief could be granted. *Id.*

Specifically, documents not physically attached to the complaint may be considered by the court if: (1) the complaint refers to the document; (2) the document is central to

plaintiff's claim; and (3) no party questions authenticity of the copy attached to the motion. *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.1994), *overruled on other grounds by Galbraith v. County of Santa Clara,* 307 F.3d 1119 (9th Cir. 2002). If the documents fit these criteria, they will not convert the motion to dismiss into a summary judgment motion.

The Court may take judicial notice of information on a government website. For example, in other circumstances, *Daniels–Hall v. Nat'l Educ. Ass'n,* 629 F.3d 992, 998–999 (9th Cir. 2010) found it appropriate to take judicial notice of information made publicly available on government websites where the authenticity of the information was not challenged.

## II. THE FOURTH AMENDMENT CLAIMS HAVE NO BASIS IN LAW.

Boudreau's two claims against the Officers should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted.

Boudreau alleges two Fourth Amendment claims. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. "The essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of 'reasonableness' upon the exercise of discretion by government officials, including law enforcement agents, in order to safeguard the privacy and security of individuals against arbitrary invasions." *Delaware v. Prouse*, 440 U.S. 648, 653-54 (1979) (internal quotation marks omitted). In assessing the permissibility of a particular law enforcement practice, the Court must balance its intrusion on an individual's Fourth Amendment interests against its promotion of legitimate governmental interests. *Id.* at 654.

Boudreau failed to state a claim upon which relief can be granted. Based on her facts as pleaded, the Court cannot draw a reasonable inference that the Officers are liable for the alleged misconduct. Based on Boudreau's factual recitation in her complaint and her other sworn statements, the Fourth Amendment claims of excessive use of force and unreasonable seizure are not plausible on their face. The facts do not allow the Court to draw a reasonable inference that the Officers are liable for the misconduct alleged. Each of the facts Boudreau alleged is addressed below, and each fact is unsupportable as a matter of law.

### A. Driving With Plates Obstructed Constituted Probable Cause to Stop Boudreau.

In her Complaint at ¶7(a), Boudreau asserted that there was no probable cause to pull her over based on obstructed plates. She is wrong.

Obstructed plates are a violation of the Anchorage Municipal Code. As stated in her Third Amended Complaint, Boudreau was pulled over in the early hours of February 19, 2023, as she was driving. See Docket 37 at ¶6. The APD Computer Aided Dispatch (CAD) noted that the Officer reported the vehicle Boudreau was driving had obstructed plates. *Id*. ¶7(c), and Docket 37-1 ("OBS PLATE"). See also, Boudreau Affidavit, ¶2, filed at Docket 24-1 ("They pulled me over for having snow on my license plate. Which is not a crime.")

The stop *was* based on probable cause. The Alaska Court of Appeals in *Way v. State*, 100 P.3d 902 (Alaska App. 2004), upheld probable cause for a stop in similar circumstances. In that case the angle of the attached license plate and the bend in it prevented the officer from viewing the plate, so the officer pulled the car over for a

violation, citing AS 28.10.070(b), which required that a plate be maintained in a location and condition so as to be clearly legible.

Similarly, the Anchorage Municipal Code 9.52.040 states:

> No motor vehicle may be operated or parked on a street, highway or vehicular way or area within the municipality with any number, letter, or registration decal or sticker of a license plate obscured or covered by dirt or debris…

Likewise, state regulation of a motor vehicle requires that a license plate be "clearly visible from a distance of 50 feet to the rear." 13 AAC 04.025(c).

Applying the holding in *Way*, a violation of the ordinance due to obstructed plates *did* establish probable cause to stop Boudreau because a violation of the ordinance constituted a traffic offense. It was not a violation of her constitutional rights to stop Boudreau for obstructed plates. *U.S. Hartz*, 584 F.3d 1011, 1017 (9th Cir. 2006) held that a "police-initiated traffic stop is reasonable under the Fourth Amendment if the police stop the vehicle because of a "reasonable suspicion" that the vehicle's occupants have broken a law." citing *United States v. Lopez–Soto,* 205 F.3d 1101, 1104–05 (9th Cir. 2000) ("We ... reaffirm that the Fourth Amendment requires only reasonable suspicion in the context of investigative traffic stops."). Boudreau was pulled over for obstructed plates, which provided the necessary "reasonable suspicion." As a matter of law, the Officers did not violate Boudreau's constitutional rights.

The allegation that the Officers stopped Boudreau without probable cause in Count I, ¶19 is without legal foundation and should be dismissed as a matter of law.

Motion to Dismiss Officers
*Boudreau, Brenda v MOA - APD*; Case No. 3:23-cv-00164-SLG
Page 6 of 19
Case 3:23-cv-00164-SLG   Document 44   Filed 06/17/25   Page 6 of 19

### B. Boudreau Was Required to Produce Her Driver's License During a Traffic Stop.

When pulled over for a traffic violation, Boudreau refused to identify herself or provide a driver's license. Boudreau asserted in her Third Amended Complaint that it was "false" that she refused to identify herself, because "Alaska [is] not…a mandatory identification state." Docket 37 at ¶7(b).

The APD CAD report noted the initial time of the stop was 00:25:47. It then noted that at 00:40:20, the dispatcher wrote that Boudreau was *still* refusing to identify herself. *See* CAD, Docket 37-1 at 1. The CAD report supports the Officers speaking to Boudreau for 15 minutes.

Without cause, Boudreau lectured the Officers about the validity of the stop for a lengthy period, rather than complying with their commands. Boudreau wrote in her Third Amended Complaint that she and her passenger spent time "explaining" to the Officers that she had "committed no crime" and explained their "constitutional rights…" *Id*. at ¶3. In her Second Amended Complaint, Docket 13, ¶7, Boudreau estimated that "For approximately 30 minutes, Plaintiff and her passenger repeatedly informed the APD officer that having snow on a license plate was not a criminal act, felony or misdemeanor in Alaska." In an affidavit previously filed as Document 13, Boudreau also estimated that she spoke to the officers for "approximately 30 minutes" to try and convince them she had not committed a "criminal act." ¶7. The Court may take judicial notice of records filed in its own database as authentic. It is clear from Boudreau's documents that she prioritized arguing with the Officers over compliance.

In order for the Officers to accurately issue a traffic citation, Boudreau needed to identify herself to the Officers.[2] It is clear that she refused to do so for at least fifteen minutes despite Officers requesting she provide them with her driver's license.

AS 28.15.131(a) requires a driver to have in their possession a valid driver's license while driving a motor vehicle in Alaska and "shall present the license for inspection upon the demand of a peace officer." Alaska case law confirms that when an officer stops a driver for a traffic violation, the officer may insist that the motorist produce routine driving documents, including a driver's license. See *Perozzo v. State*, 493 P.3d 233, 237 (Alaska App. 2021) and *Clark v. Anchorage*, 112 P.3d 676, 678 (Alaska App. 2005). See also *U.S. v. Maldonado*, 356 F.3d 130, 134 (1st Cir. 2004), cited with favor by *Clark,* holding that when a police officer stops a motorist for a traffic violation, the officer may ask the motorist to produce routine driving documents. Boudreau's assertion that Alaska was not a "mandatory identification state" is without merit.

In *Rodriguez v. U.S.*, 575 U.S. 348, 355 (2015) the U.S. Supreme Court acknowledged that part of an officer's typical job duties on a traffic stop is to check the driver's license, determine whether there are outstanding warrants against the driver, and inspect the automobile's registration and proof of insurance. The Court accepted that: "These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Id*. citing *Delaware v. Prouse*, 440 U.S. 648, 658-659 (1979.)

---

[2] Boudreau has not addressed in her Third Amended Complaint, or indeed in any of her federal court filings, the question of whether she in fact had a valid driver's license.

Motion to Dismiss Officers
*Boudreau, Brenda v MOA - APD*; Case No. 3:23-cv-00164-SLG
Page 8 of 19
Case 3:23-cv-00164-SLG    Document 44    Filed 06/17/25    Page 8 of 19

Any reasonable officer would request a driver's license from the driver of a vehicle during a traffic stop. The officer's insistence that Boudreau, as the driver of the vehicle, produce her driver's license was not a violation of her constitutional rights.

The allegation in Count I regarding unreasonable seizure, which included an order to produce a valid driver's license, is without legal foundation and should be dismissed as a matter of law.

### C. Officers Used Appropriate Force.

Whether the use of force is reasonable requires the Court to analyze the "totality of the circumstances." *Barnes v. Felix*, 605 U.S. --, 145 S.Ct. 1353, 1358 (2025), citing *County of Los Angeles v. Mendez*, 581 U.S. 420, 428 (2017). It also requires a "careful attention to the facts and circumstances" relating to the incident, as then known to the officer. *Id*. citing *Graham v. Connor*, 490 U.S. 386, 396 (1989). To determine whether an officer used reasonable force in compliance with the Fourth Amendment, the Court should balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396. As noted in *Graham*, the U.S. Supreme Court has "long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id*. at citing *Terry v. Ohio,* 392 U.S., at 22–27, 88 S.Ct., at 1880–1883. The analysis "take[s] into account the totality of the circumstances, including," among other things, "the type and amount of force inflicted, the severity of injuries, the severity of the crime at issue, whether the suspect poses an

immediate threat to the safety of the officers or others, and whether he is actively resisting arrest." *Hopson*, 71 f.4th at 698 (quotation marks omitted).

*Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019) ("In Fourth Amendment excessive force cases, we examine whether police officers' actions are objectively reasonable given the totality of the circumstances."). To determine the reasonableness of the force used, a court must consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Factors to consider include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; [and] the threat reasonably perceived by the officer." *Lombardo* v. City of St. Louis, Missouri, 594 U.S. 464, 467 (2021), citing *Kingsley v. Hendrickson*, 576 U.S. 389, 388 (2015) ("use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting").

Based only on the facts that Boudreau has presented to the Court, the use of force in this case was reasonable. The allegation in Count VI regarding excessive use of force is without legal foundation and should be dismissed as a matter of law.

### D. Boudreau Disobeyed a Lawful Order, Justifying Her Arrest.

The commission of the misdemeanor justified the use of handcuffs during arrest, and it justified blocking in her car so that she could not drive away during the arrest. These actions were not an excessive use of force and were taken only incident to a lawful arrest. The officers used a minimal amount of force.

Boudreau violated AMC 8.30.010.A.6 by disobeying the lawful order to provide the Officers with her driver's license. She intentionally and knowingly disobeyed the order to provide her driver's license, which constituted a class B misdemeanor. AMC 8.30.010.C. See also *Lake v. Municipality of Anchorage*, 2008 WL 2697771 *3-*4 (Alaska 2008) which upheld the conviction for refusal to follow the officer's orders.

Boudreau failed and refused to provide her driver's license, a fact that she admitted to in a previously filed affidavit. See Boudreau Affidavit, Docket 13 at ¶9. She admitted in her First Amended Complaint that she was ordered to "exit her vehicle but that she "refused. *Id*. at Docket 8, p. 1 ("The officers ordered Plaintiff to exit her vehicle. When she refused, the officers shattered her driver's side window…") See also, Affidavit at Docket 13, at ¶8 (admitting that the officers demanded that she exit the vehicle). She also said she "requested to see a warrant before exiting her vehicle. *Id*. at ¶10.

As noted above, the Officers spent 15 minutes talking to Boudreau, during which time she tried to talk her way out of being arrested. Boudreau actively resisted a lawful order from the Officers and was uncooperative for a lengthy period of time while the Officers tried to reason with her.

Extracting Boudreau from the vehicle did not harm her. Boudreau did not allege she was cut by the glass from the shattered window. In fact, the only evidence come from the passenger in the vehicle, who observed the glass from the broken window "on the ground" not on the seat. See Affidavit of D. Darden, Docket 37-2 at ¶11.

Given the elapsed time and the minimal force used, the officers showed restraint by attempting to first talk Boudreau into complying with the law before they resorted to blocking in her car and breaking the driver's window in order to make Boudreau exit the vehicle to arrest her. It was objectively reasonable for the officers to finally force Boudreau to exit and to handcuff her in response to the misdemeanor crime they charged her with. As a held in *Graham*, the Officers' actions were "objectively reasonable" from the perspective of a reasonable officer at the scene, in light of the facts and circumstances confronting them. 480 U.S. at 396. As a matter of law, the totality of the circumstances as found in Boudreau's pleadings justified the Officer's actions, which constituted a minimal use of force in the circumstances presented.

The allegation in Count IV regarding excessive use of force is without legal foundation and should be dismissed as a matter of law.

E. **Search of a Person During Arrest is Necessary for Officer Safety.**

Probable cause to stop Boudreau from a traffic offense ultimately turned to resisting arrest, and Boudreau *was* arrested. At that point, it was lawful for the Officers to search her person. In *United States v. Robinson*, 414 U.S. 218, 235 (1973) the Supreme Court decided that in the case of a lawful arrest a full search of the person is reasonable under the Fourth Amendment:

> The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment.

As noted in *United States v. Ruckes*, 586 F.3d 713, (9th Cir 2009): "So was born the search-incident-to-arrest doctrine, which permits officers to search an arrestee's person subsequent to the arrest of that individual."

Boudreau was arrested based upon probable cause and was pulled from the vehicle and handcuffed. It was lawful, according to long standing federal case law, for the Officers to then search her person. This is often done for the safety of all parties, but especially for the safety of the Officers who have taken control of Boudreau. During an arrest, the Officers need to be sure that no weapons or other sharp or hazardous items are on Boudreau's person. The search was not a violation of the Fourth Amendment because an arrest is a reasonable intrusion under the Fourth Amendment and required no further justification.

It is unfortunate that Boudreau "felt" the search was "like sexual molestation[3] to her" but she does not state in her Third Amended Complaint that the search of her body was offensive. She objects to what she claims was a brief exposure of her underwear during

---

[3] The Officers specifically **deny** any such action occurred, but the facts must be viewed from Boudreau's Third Amended Complaint for this motion only.

the search for weapons. It would not be unreasonable for the Officers to (allegedly) determine whether she had a hidden weapon hidden beneath her skirt rather than actually touching her person. No case law states that what Boudreau alleges was a violation of her Fourth Amended rights. The allegation in Count IV regarding the search conducted is without legal foundation and should be dismissed as a matter of law.

**F. Signing the Order and Condition – Release Per Schedule was Not Coercive.**

Boudreau stated that the Officers "forced" her to sign a release while in handcuffs. Third Amended Complaint at ¶13, p. 4, The document that she referenced was previously filed with the Court as Document 32-2, *Order and Conditions – Release per Schedule*. It details the conditions upon which Boudreau was released on her own recognizance without being brought before a magistrate judge. It provided *her* with the information necessary for *her* to understand when to appear and on what conditions she was released.

If she had refused to sign the document releasing her on her own recognizance, the Officers would have been required to take her before a magistrate. See APD Policy 3.02.005 at VI.A.1, which mentions the document but leaves it to the discretion of the officer when a bail hearing before a magistrate might be necessary. This policy is publicly available to the Court on the APD website at https://public.powerdms.com/ANCHOR/tree. The Court may take judicial notice of the Anchorage Police Department policies that are available on a government website. The issue is directly relevant to her claim, the website is aimed to provide information to the public generally about APD policies, and its authenticity is not in question.

Motion to Dismiss Officers
*Boudreau, Brenda v MOA - APD*; Case No. 3:23-cv-00164-SLG
Page 14 of 19

Case 3:23-cv-00164-SLG     Document 44     Filed 06/17/25     Page 14 of 19

It is standard APD practice, pursuant to the policy, to have Boudreau sign the Order and Conditions – Release per Schedule and did not constitute coercion. The explanation that if she did not sign, she would need to appear before a magistrate for a bail hearing did not constitute an involuntary waiver of Boudreau's rights. The is without legal foundation and should be dismissed as a matter of law.

### G. Boudreau Did Not Allege an Articulable Claim of a "Pattern" of Excess Force.

Boudreau claimed in her Third Amended Complaint at ¶29 that the Officers used a "pattern" of excessive, militarized force during routine traffic encounters." *Id*. However, her complaint did not articulate any "pattern" let alone "excessive" or "militarized" use of force.

Instead, Boudreau alleged that the alleged actions taken *solely* against her during *one* traffic stop were wrong, and concluded they were a violation of her constitutional rights. A "pattern" must involve an act that is so "longstanding" that it "constitutes the standard operating procedure of the local government entity." *Villegas v. Gilroy Garlic Festival Ass'n,* 541 F.3d 950, 964 (9th Cir. 2008). Boudreau did not recite any fact to prove the Officers had taken any such action in the past; she did not articulate any act against herself, other than that allegedly taken on February 19, 2023. Thus, Boudreau's pleading does not articulate a "pattern of using excessive, militarized force." She failed to state a claim upon which relief can be granted. The allegation in Count IV regarding an alleged pattern is without legal foundation and should be dismissed as a matter of law.

## III. THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY.

This Court could, but need not, decide the 12(b)(6) question to grant this motion. For present purposes, "it is sufficient that" no existing case law "clearly establish[es] that the [officers'] use of force was *un*lawful." *Hopson v. Alexander*, 71 F.4th 692, 701 (9th Cir. 2023).

At a minimum, dismissal is required because Boudreau cannot overcome the high bar of qualified immunity, which is designed to give officers room to do their jobs and make the judgments necessary during an arrest. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly,* 580 U.S. 73, 78–79 (2017) (*per curiam*).

To begin with, the Supreme Court has "repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "[Q]ualified immunity is an immunity from suit rather than a mere defense to liability [which] is effectively lost if a case is erroneously permitted to go to trial." *Id.* citing *Mitchell v. Forysyth*, 472 U.S. 511, 526 (1985). It "is meant to give government officials a right, not merely to avoid standing trial, but also to avoid the burdens of such *pretrial* matters as discovery." *Behrens v. Pelletier,* 516 U.S. 299, 308 (1996) (quotation marks omitted). Qualified immunity can, and should, be resolved on a "motion to dismiss." *Id.*

The focus is on whether the Officers had fair notice that their conduct was unlawful, and reasonableness is judged against the backdrop of the law at the time of the conduct.

*Brosseau v. Haugen,* 543 U.S. 194, 198 (2004) (*per curiam*). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law," and it applies unless "existing precedent" has "placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018). Here, Boudreau's pleading fails to establish that "every reasonable official" in these officers' positions would have understood that what they were doing violated Boudreau's "clearly established" right. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (*per curiam)* (quotation marks omitted). The Supreme Court has repeatedly emphasized that qualified immunity is a very high bar for a plaintiff to clear.

The Court can conclude that the Officers' alleged actions, if true, would have violated a plaintiff's "clearly established" rights only if existing precedent has "placed the statutory or constitutional question beyond debate." *Kisela,* at 104. Accordingly, qualified immunity may be withheld only if, in light of existing precedent, the right is "sufficiently clear that *every reasonable official*" in those circumstances "would have understood that what he is doing violates" a clearly established right. *Mullenix*, 577 at 11 (emphasis added) quoting *Reichle v. Howards*, 566 U.S 658, 664 (2012). The precise rule a plaintiff would seek to apply to a defendant in a particular case must thus be "dictated" by "settled law." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018).

Moreover, the Supreme Court "has repeatedly told [C]ourts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." *Kisela*, 584 U.S. at 104, citing City and County of San Francisco v. Sheehan, 575 U.S. 600, 613 (2015) (quotation marks omitted). "It is not enough that the rule is suggested by then-existing precedent." *Wesby*, 583 U.S. at 63. An officer is "entitled to qualified immunity"

Motion to Dismiss Officers
*Boudreau, Brenda v MOA - APD*; Case No. 3:23-cv-00164-SLG
Page 17 of 19
Case 3:23-cv-00164-SLG     Document 44     Filed 06/17/25     Page 17 of 19

so long as "none of the cases *squarely governs* the case here" in "the circumstances with which [an officer] was confronted." *Mullenix*, 577 U.S. at 13. "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Id.* at 12 (quotation marks omitted). "Such specificity is especially important in the Fourth Amendment context, where the [Supreme] Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Id.* (cleaned up).

Boudreau's factual recitation and claims do not articulate that the Officers violated *any* clearly established right, as set forth above, let alone one that was "beyond debate." The stop was lawful, blocking Boudreau's vehicle was lawful, removing her from the vehicle was lawful, handcuffing and conducting a search incident to arrest was lawful. Further, the Officers are immune from the action of breaking Boudreau's driver's window when Boudreau refused to provide a driver's license or otherwise obey Officer directions. The window was broken to extract her from the vehicle after fifteen minutes of Boudreau refusing to comply with their orders. Similarly, extracting Boudreau from the vehicle was lawful in order to effectuate her arrest. There is no case precedent to establish that the officers violated a clearly established right because their actions were supported by the law.

As a matter of law, Boudreau had no clearly established right that was violated. The Officers should be found to be immune from the claims in the Third Amended Complaint. The claims should be dismissed.

## IV. CONCLUSION.

For all the reasons stated herein, the Court should dismiss all the claims against the Officers raised in Boudreau's Third Amended Complaint.

Respectfully submitted this 20th day of June, 2025.

        EVA R. GARDNER
        Municipal Attorney

By:  *s/ Linda Johnson*
       Assistant Municipal Attorney
       P.O. Box 196650
       Anchorage, Alaska 99519-6650
       Phone: (907) 343-4545
       Fax: (907) 343-4550
       E-mail: uslit@muni.org
       Alaska Bar No. 8911070

Certificate of Service
The undersigned hereby certifies that on 06/20/2025, a
true and correct copy of the foregoing was served on:

Brenda Boudreau
c/o Mark Blackford
10167 Nantucket Loop
Anchorage, AK  99507
bboudreau.legal@gmail.com

by first class regular mail/email, if noted above, or by electronic
means through the ECF system as indicated on the Notice
of Electronic Filing.

/s *Marie Stafford*
Marie Stafford, Legal Secretary
Municipal Attorney's Office