Linda J. Johnson
Assistant Municipal Attorney
Municipal Attorney's Office
P.O. Box 196650
Anchorage, Alaska 99519-6650

Phone: (907) 343-4545
Email: uslit@muni.org

Attorney for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| BRENDA BOUDREAU, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| MUNICIPALITY OF ANCHORAGE, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) Case No. 3:23-cv-00164-SLG |

**REPLY TO OPPOSITION TO
MOTION TO DISMISS OFFICERS**

Defendants Officers in this case moved for an order dismissing the claims for a failure to state a claim upon which relief can be granted, as found in Fed. R. Civ. P. 12(b)(6), and for qualified immunity. Brenda Boudreau's (Boudreau) reply is premised on a misstatement of facts and conclusory assumptions that have no legal support. The motion should be granted.

I.  **MONELL DOES NOT RELATE TO THE CLAIMS AGAINST THE OFFICERS.**

Boudreau briefed a liability theory against the officers on a *Monell* theory of "a pattern" of violations. Opp at 8. [1] A *Monell* theory of liability is not applicable to the officers, it is only applicable to a government entity. *Monell v. Department of Social Services of City of New York,* 436 U.S. 658 (1978) established a method to sue a local governmental entity under the 42 U.S.C. §1983 statute. The Municipality briefed the *Monell* claims asserted against it in a Motion for Summary Judgment. Docket at 31. The claims against the Municipality were dismissed. Docket at 38.

In *Kentucky v. Graham,* 473 U.S. 159 (1985), the U.S. Supreme Court did way with the need to bring suit against a local government official rather than directly against the municipality itself. *Id*. at 167 n.14 ("it **is no longer necessary or proper** to name as a defendant a particular local government officer acting in official capacity. To do so only leads to a duplication of documents and pleadings, as well as wasted public resources…") Emphasis added. There was no need for Boudreau to name the Officers in their official capacities.

If Boudreau alleges that she brought claims against the officers in their official capacities, which was not clear from the Third Amended Complaint, then the officers request that the Court apply the arguments it made in its Motion to Dismiss to any claims against the officers in their official capacity. The Order at Docket 38 granting the dismissal

---

[1] Presumably the allegation of a "pattern of economic terrorism" based on the allegation of seizures of five of Boudreau's vehicles is part of the *Monell* claim. *See* Opp. at 7.

Reply to Opposition to Motion to Dismiss Officers
*Boudreau, Brenda v MOA - APD*; Case No. 3:23-cv-00164-SLG
Page 2 of 16

Case 3:23-cv-00164-MMS    Document 48    Filed 07/02/25    Page 2 of 16

of the Municipality, should apply to the officers to the extent that Boudreau intended to sue them in their official capacity.

## II. THE FOURTH AMENDMENT CLAIMS HAVE NO BASIS IN LAW.

Boudreau's two Fourth Amendment claims against the officers should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. For a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). In her 10 page Opposition, Boudreau failed to support her claims with appropriate legal citations or raise plausible factual assertions. Boudreau's Fourth Amendment claims of excessive use of force and unreasonable seizure are not plausible on their face, which is required in order to survive the motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009), quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007).

Based on the facts as pleaded, even when drawn in Boudreau's favor, she had not pleaded a claim that suggests she is entitled to relief. The officers are not liable for the misconduct alleged.

### A. The Traffic Violations Were *Not* Dismissed by "the State."

Boudreau asserts that "the State" dismissed all charges against her. As noted in Docket 31-1, it was the Municipal Prosecutor who dismissed the criminal case against her. The Notice of Decline was specific to the named complaint: *Municipality of Anchorage v. Brenda Lynn Boudreau*, State District Court Case No. 3AN-23-1329CR. *Id*. The Prosecutor did *not* say "Plaintiff committed no crime" as Boudreau characterized the

Reply to Opposition to Motion to Dismiss Officers
*Boudreau, Brenda v MOA - APD*; Case No. 3:23-cv-00164-SLG
Page 3 of 16
Case 3:23-cv-00164-MMS   Document 48   Filed 07/02/25   Page 3 of 16

dismissal. Opp. at 2. What Prosecution told the state court was the "case is being declined for prosecution…" Docket 31-1. No rationale was provided for the declination, nor did the decline notice include or encompass any other pending matter.

Boudreau asserts that "no traffic violations existed – all charged dismissed." Opp. at 2. This is incorrect. It was a false assumption on Boudreau's part, that leads her to make the conclusory statement. She assumes that there was no reasonable suspicion for the initial stop *because* her case was declined. Her unsupported conclusion from the declination that there was no probable cause to pull her over is misplaced.

Boudreau admitted, in her Opp. at 3, that she received multiple traffic tickets, one of which she listed as 3AN-23-03469MO – Obscured/tinted/dirty license plates.[2] Boudreau was issued this traffic ticket for a violation of AMC 9.52.040.

Boudreau does not support her assumption that a moving violation is within the Prosecutor's purview to dismiss, nor does she state how it would have been part of the dismissal of her criminal charge in the Notice of Decline. See Docket 31-1.

The Supreme Court has noted that the court is not required to accept a complaint's allegations as true if there are merely threadbare recitals of a cause of action's elements, supported by conclusory statements. *Bell Atlantic Corp. v. Twombly* 550 U.S. 555 (2007). In this case, Boudreau has not recited elements, has not supported her allegations with any legal citations, and failed to sustain her threadbare recitals of "fact."

---

[2] See also Alaska State Courtview database records; the Court may take judicial notice of the State Court System's Courtview database, which constitutes government records on a state government website listing basic information about cases filed, for which no legitimate objection to its authenticity could be made.

Reply to Opposition to Motion to Dismiss Officers
*Boudreau, Brenda v MOA - APD*; Case No. 3:23-cv-00164-SLG
Page 4 of 16

Case 3:23-cv-00164-MMS    Document 48    Filed 07/02/25    Page 4 of 16

As a matter of law, there is no factual or legal merit to the assertion that the traffic violations were dismissed by the Prosecutor.

### 1. State Court Processes Traffic Tickets

Boudreau's assertion that "defendants" continued forward with prosecution of her traffic tickets after the Municipal Prosecutor submitted a decline notice regarding her criminal charge is demonstrably false. The court is not required to accept as true any allegation that is clearly contradicted. See *Acosta v. City of Costa Mesa,* 718 F.3d 800, 826 (9th Cir. 2013). It is the State Court that moves traffic tickets forward, when the person fails to respond or pay the ticket. The Alaska Court System has a significant section dedicated to questions about "Traffic Cases (Minor Offenses)".[3] The topics include "What is a minor offense", "I just got a minor offense citation, what do I do now?" and "What happens if I don't respond to the citation?" The authenticity and availability of the information on the Alaska Court System's website should not be in question, and the officers ask that the court take notice of it. The FAQs define a minor offense to include "municipal motor vehicle or traffic offense." The FAQs list the options for a person receiving a minor offense citation and the consequences of not responding. The FAQ specifically states:

> If you do not respond within 30 days, you will be sent a warning notice giving you 15 additional days to respond. If you do not respond after those 15 days, the court will enter default judgment …

---

[3] See https://courts.alaska.gov/shc/mo/index.htm

Reply to Opposition to Motion to Dismiss Officers
*Boudreau, Brenda v MOA - APD*; Case No. 3:23-cv-00164-SLG
Page 5 of 16
Case 3:23-cv-00164-MMS    Document 48    Filed 07/02/25    Page 5 of 16

Therefore, according to the FAQ, it is *not* the officers that would have sought entry of default judgment for Boudreau's unpaid traffic tickets, it was the State Court. Boudreau failed to state a claim against the officers.

### B. Driving With Plates Obstructed Constituted Probable Cause to Stop Boudreau.

Boudreau attempts to create an issue of fact by insisting that the officer who pulled her over told APD dispatch he had "nothing". Opp at 1. This is an incomplete statement. The entry at 00:30 in the Anchorage Police Department (APD) Computer Aided Dispatch (CAD) report, attached at Docket 37 and 47-1, states in full:

> I HAVE NOTHING **OTHER THAN** OBS PLATE AND 10-32[4] REFUSING TO ID.

Emphasis added. Boudreau attempts to parse out the first part of statement – "I have nothing" – and asks the court to ignore the remainder of the entry after the words "other than". She classifies those three words as a "real time Admission." Opp. at 6. Parsing the phrase is central to Boudreau's narrative that there was no probable cause to pull her over, but using only three words of the entry misrepresents the entirety of the statement. As noted, the court is not required to accept as true any allegation that is clearly contradicted. *Acosta,* 718 F.3d at 826.

The CAD clearly stated more than "I have nothing." The context is important. In the entire entry, the officer was reporting to APD dispatch that he had no information to provide about the driver *other than* the reason he stopped her (obstructed plates), due to

---

[4] "10-32" is police code for "uncooperative person."

Reply to Opposition to Motion to Dismiss Officers
*Boudreau, Brenda v MOA - APD*; Case No. 3:23-cv-00164-SLG
Page 6 of 16

Case 3:23-cv-00164-MMS    Document 48    Filed 07/02/25    Page 6 of 16

her refusal to identify herself. The court should not permit Boudreau to isolate the words "I have nothing" to create a false narrative. The court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit, nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *Sprewell V. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Boudreau cannot refute that the officers had probable cause to pull her over. Driving with obstructed plates constituted probable cause. *See* AMC 9.52.040, 13 AAC 04.025(c); and *Way v. State*, 100 P.3d 902 (Alaska App. 2004) (upheld probable cause for a stop on a bent, unreadable license plate). She alleges that she "committed no crime" but ignores the applicable legal standard was "probable cause." See Boudreau Affidavit, ¶2, filed at Docket 24-1 ("They pulled me over for having snow on my license plate. Which is not a crime.") Probable cause was demonstrated by the officers.

She disputes, without evidence or legal citation, that obstructed plates sufficed as probable cause to pull her over. There is no merit to Boudreau's assertion. The allegation that the officers stopped Boudreau without probable cause is without legal foundation and should be dismissed as a matter of law.

### C. Delay in Identifying Boudreau as a Scofflaw Was Based on her Refusal to Identify Herself; It was Not "Pretextual."

In a series of conclusory statements, each of which was not correct, Boudreau stated that it took 37 minutes before she was classified as a "scofflaw", and she asserted that the

Reply to Opposition to Motion to Dismiss Officers
*Boudreau, Brenda v MOA - APD*; Case No. 3:23-cv-00164-SLG
Page 7 of 16

Case 3:23-cv-00164-MMS    Document 48    Filed 07/02/25    Page 7 of 16

mention of "scofflaw" was "pretextual." Opp. at 4. Boudreau cites the CAD report for her analysis.

A review of the CAD report proves that at 00:40, 15 minutes after the initial stop at 00:25, the officer told APD dispatch that the driver was "still refusing to ID…" To determine whether a driver appears on the scofflaw list, an officer must know the name of the driver. It is not, therefore, "pretextual" for there to be a delay in citing Boudreau for a scofflaw violation until after she has been clearly identified, arrested and processed.

As stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009):

A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.

The allegation of pretext is a conclusion that is not entitled to the assumption of truth.

### D. Boudreau Was Required to Produce Her Driver's License During a Traffic Stop.

Without citation, Boudreau insists that "Alaska is not a stop and ID state." Opp. at 5. This argument was briefed in the officers' Motion. Her attempt to disregard AS 28.15.131(s) is without legal foundation or citation.

Boudreau compounds her error with a false assertion that she was "legally parked and resting" when given a ticket and thus did not need to identify herself. Opp. at 5. This is a misstatement of the facts. As noted in her prior affidavit, Boudreau acknowledged that she was driving and was pulled over for an obstructed license plate. Boudreau Affidavit, ¶2, filed at Docket 24-1. By her admission, when the officer first contacted her, she was

Reply to Opposition to Motion to Dismiss Officers
*Boudreau, Brenda v MOA - APD*; Case No. 3:23-cv-00164-SLG
Page 8 of 16

Case 3:23-cv-00164-MMS    Document 48    Filed 07/02/25    Page 8 of 16

driving, not parked. The officer sought her identification after she pulled over on the side of the road, incident to the traffic stop. Her assertion that she was "parked and resting" is a misstatement of the facts and should be set aside. Further, her assertion is contrary to the facts stated in her Third Amended Complaint in which she stated that she was "lawfully operating her vehicle" when she was subjected to a traffic stop. Docket 37 at 2, ¶6. In fact, Boudreau was driving and was pulled over. There is no technicality to release her from her obligation to produce a valid driver's license. Her assertion should fail.

Boudreau was required to produce a driver's license during the traffic stop. In a conclusory fashion, she asks the court to disregard the established law. AS 28.15.131(a) requires a vehicle driver to have in their possession a valid driver's license and to present the license for inspection upon the demand of a peace officer. Alaska case law supports the statutory requirement for a driver to produce the license. See *Perozzo v. State*, 493 P.3d 233, 237 (Alaska App. 2021) and *Clark v. Anchorage*, 112 P.3d 676, 678 (Alaska App. 2005). See also *U.S. v. Maldonado*, 356 F.3d 130, 134 (1st Cir. 2004) (when a police officer stops a motorist for a traffic violation, the officer may ask the motorist to produce routine driving documents) *Rodriguez v. U.S.*, 575 U.S. 348, 355 (2015) (acknowledged that part of an officer's typical job duties on a traffic stop is to check the driver's license). Boudreau's assertion that Alaska was not a "mandatory identification state" is without merit.

Boudreau's assertion that "Alaska is not a stop- and identify state" is without merit. *See* Opp. at 5. In her brief, Boudreau misinterpreted the case law, referring to a "Terry Stop," which is a specific type of stop with well-developed history. *Terry v. Ohio,* 392 U.S.

Reply to Opposition to Motion to Dismiss Officers
*Boudreau, Brenda v MOA - APD*; Case No. 3:23-cv-00164-SLG
Page 9 of 16

Case 3:23-cv-00164-MMS    Document 48    Filed 07/02/25    Page 9 of 16

1 (1968) held that an officer's reasonable suspicion that a person may be involved in criminal activity permitted the officer to stop that person for a brief time, obtain identification, and take additional steps to investigate further if necessary. In a follow up case, *Hiibel v. Sixth Judicial Court of Nevada, Humboldt Country*, 542 U.S. 177 (2004), the Supreme Court interpreted Nevada's "stop and identify" statute. Nevada's "stop and identify" statute required Hiibel, who was detained by an officer under suspicious circumstances, to identify himself. Hiibel, who was prosecuted for failing to identify himself, was standing outside a parked vehicle – he was not driving the vehicle. The Supreme Court upheld the request for identification and found the prosecution of the defendant was not a violation of the Fourth or Fifth Amendment. The concept of "stop and identify" in these two U.S. Supreme Court cases is distinguishable in this scenario, because there was probable cause to pull Boudreau's vehicle over in a traffic stop, which is not applicable to the "stop and identify" body of law in which no specific probable cause is present.

After being pulled over for a traffic violation, Boudreau refused to identify herself. Boudreau does not identify how the *lawful* requirement to provide her driver's license during a traffic stop was a violation of her rights.

Any reasonable officer would request a driver's license from the driver of a vehicle during a traffic stop. Here, the officer's insistence that Boudreau, as the driver of the vehicle, produce her driver's license was not a violation of her constitutional rights.

Reply to Opposition to Motion to Dismiss Officers
*Boudreau, Brenda v MOA - APD*; Case No. 3:23-cv-00164-SLG
Page 10 of 16

Case 3:23-cv-00164-MMS    Document 48    Filed 07/02/25    Page 10 of 16

The allegation regarding unreasonable seizure, which included an order to produce a valid driver's license, is without legal foundation and should be dismissed as a matter of law.

### E. Boudreau Does Not Dispute that Officers Used Appropriate Force.

Boudreau did not demonstrate any facts that would indicate that the force used by the officers was unreasonable. *See Barnes v. Felix*, 605 U.S. --, 145 S.Ct. 1353, 1358 (2025), citing *County of Los Angeles v. Mendez*, 581 U.S. 420, 428 (2017). With "careful attention to the facts and circumstances" relating to the incident, as then known to the officers, Boudreau was pulled over for obstructed plates. Officers spoke to her for 15 minutes, but she continued to refuse to provide her driver's license.

The court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake" to determine whether the officers' actions were objectively reasonable "in light of the facts and circumstances confronting them." *Graham*, 490 U.S. at 396. Here, Boudreau was non-compliant with the order to provide her identification and continued to argue that she had committed no crime. At some point, an officer must enforce his orders. *Graham* recognized that the long standing right that a traffic stop "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id*. Applying that analysis, and taking into account the totality of the circumstances, the type and amount of force inflicted during the arrest was appropriate: blocking in her car so she could not leave, breaking the window to effect arrest and handcuffing Boudreau. Boudreau did not state she was injured, nor did she assert she was cut by the glass from the window. The commission

Reply to Opposition to Motion to Dismiss Officers
*Boudreau, Brenda v MOA - APD*; Case No. 3:23-cv-00164-SLG
Page 11 of 16

Case 3:23-cv-00164-MMS    Document 48    Filed 07/02/25    Page 11 of 16

of the misdemeanor justified the use of handcuffs during arrest, and it justified blocking in her car so that she could not drive away during the arrest. These actions were not an excessive use of force and were taken only incident to the lawful arrest.

The severity of the crime at issue was, up to that point, her failure to identify herself, which posed a threat to the safety of the officers since they did not know whether she had outstanding warrants, or had access to weapons in the truck, and given that she was resisting arrest by failing to identify herself, she posed a unique type of threat to the officers, who should not have to quibble endlessly with a non-compliant driver. The officers' actions were objectively reasonable, because they used no more force than necessary to achieve an arrest.

Boudreau violated AMC 8.30.010.A.6 by disobeying the lawful order to provide the officers with her driver's license. She intentionally and knowingly disobeyed the order to provide her driver's license, which constituted a class B misdemeanor. AMC 8.30.010.C. The Alaska Supreme Court in *Lake v. Municipality of Anchorage*, 2008 WL 2697771 *3-4 (Alaska 2008) upheld the driver's conviction for refusal to follow the officer's orders. In this case, Boudreau does not refute that she failed and refused to provide her driver's license; in fact, she claims she was justified in withholding it, citing an incorrect legal standard.

After attempting to first talk Boudreau into complying with the law before they blocked in her car and broke the driver's window, the officers' actions were "objectively reasonable" from the perspective of an officer at the scene, considering the facts and circumstances confronting them. *Graham,* 490 U.S at 397. In other words, the court must

Reply to Opposition to Motion to Dismiss Officers
*Boudreau, Brenda v MOA - APD*; Case No. 3:23-cv-00164-SLG
Page 12 of 16

Case 3:23-cv-00164-MMS    Document 48    Filed 07/02/25    Page 12 of 16

"balance the amount of force applied with the need for that force. *See Bryan v. MacPherson*, 630 F.3d 805, 823-824 (9th Cir. 2010). As a matter of law, the totality of the circumstances justified breaking the window of the vehicle to extract Boudreau and then handcuffing her.

The allegation in Count IV regarding excessive use of force is without legal foundation and should be dismissed as a matter of law.

After talking to Boudreau for 15 minutes the officers used a limited amount of force to effectuate her arrest. There is no case law that would have prevented the force used in this situation. In balancing the amount of force applied with the need for the force, the officers' actions were objectively reasonable.

### F. Search of a Person During Arrest is Necessary for Officer Safety.

Boudreau has not provided any legal authority that the search incident to arrest was a violation of her Fourth Amended rights.

Part of an officer's duties is to search someone when arresting them. In *United States v. Robinson*, 414 U.S. 218, 235 (1973), the court held that it "is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." *Id*. at 224. The court also held:

> A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment but is also a 'reasonable' search under that Amendment.

*Id*. at 235.

Reply to Opposition to Motion to Dismiss Officers
*Boudreau, Brenda v MOA - APD*; Case No. 3:23-cv-00164-SLG
Page 13 of 16

Case 3:23-cv-00164-MMS    Document 48    Filed 07/02/25    Page 13 of 16

Officers had probable cause to arrest Boudreau. The search in this case was a reasonable intrusion under the Fourth Amendment, since it was the lawful arrest that established the authority of the officers to search. Boudreau did not provide any case that has held otherwise.

### G. Signing the Order and Condition of Release was Not Coercive.

Boudreau maintains that the officers "forced" her to sign the *Order and Conditions of Release per Schedule* while she was handcuffed. Opp at 9. Acknowledging the details the conditions upon which Boudreau could be released on her own recognizance without being brought before a state magistrate judge was not coercive. She did not give up any right by signing the document. Indeed, the document provided her with the information necessary for her to understand when to appear and on what conditions she was released without bail. Signing a document that explained her rights did not constitute an involuntary waiver of any right.

## III. THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY.

Boudreau's argument that qualified immunity should not be granted is without merit.

The law at the time of Boudreau's arrest did not provide any notice, let alone fair notice, that the officers' conduct was unlawful. See *Brosseau v. Haugen,* 543 U.S. 194, 198 (2004) (*per curiam*). There existed then, as now, no law or case law that would have given the officers notice that their actions violated an established law. The court cannot conclude that the officer's alleged actions, if true, would have violated Boudreau's "clearly established" rights, since no existing precedent "placed the statutory or constitutional

Reply to Opposition to Motion to Dismiss Officers
*Boudreau, Brenda v MOA - APD*; Case No. 3:23-cv-00164-SLG
Page 14 of 16

Case 3:23-cv-00164-MMS    Document 48    Filed 07/02/25    Page 14 of 16

question beyond debate." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018). No reasonable officer could have understood that after 15 minutes of non-compliance, that blocking in Boudreau's car, breaking the window, arresting her, handcuffing her and then searching her would have violated a clearly established right. See *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam). The officer's actions were of the type undertaken on a routine basis by officers across the country when dealing with a non-compliant vehicle driver. The officers are entitled to qualified immunity because no case *squarely governs* the "the circumstances with which [an officer] was confronted." *Id*. at 13.

Boudreau's arguments over the "evidence" fails for the reasons set forth above. Her case citation is not applicable to immunity.

Finally, Boudreau alleges that there was "pre-planning" because the first officer called for backup from a second officer "2 seconds" after he pulled her over. Opp. at 8. See CAD. A call for back up is not "inconsistent" with "legitimate law enforcement" and no legal authority was provided by Boudreau to prove otherwise.

The officers should be found to be immune from all claims in Count I and IV of the Third Amended Complaint.

IV. **CONCLUSION.**

For all the reasons stated herein, the court should dismiss all the claims against the officers raised in Boudreau's Third Amended Complaint.

Reply to Opposition to Motion to Dismiss Officers
*Boudreau, Brenda v MOA - APD*; Case No. 3:23-cv-00164-SLG
Page 15 of 16

Case 3:23-cv-00164-MMS    Document 48    Filed 07/02/25    Page 15 of 16

Respectfully submitted this 2nd day of July, 2025.

          EVA R. GARDNER
          Municipal Attorney

    By: *s/ Linda Johnson*
          Assistant Municipal Attorney
          P.O. Box 196650
          Anchorage, Alaska 99519-6650
          Phone: (907) 343-4545
          E-mail: uslit@muni.org
          Alaska Bar No. 8911070

<u>Certificate of Service</u>
The undersigned hereby certifies that on 07/02/2025, a true and correct copy of the foregoing was served on:

Brenda Boudreau
c/o Mark Blackford
10167 Nantucket Loop
Anchorage, AK  99507
bboudreau.legal@gmail.com


by first class regular mail/email, if noted above, or by electronic means through the ECF system as indicated on the Notice of Electronic Filing.

/s *Marie Stafford*
Marie Stafford, Legal Secretary
Municipal Attorney's Office

Reply to Opposition to Motion to Dismiss Officers
*Boudreau, Brenda v MOA - APD*; Case No. 3:23-cv-00164-SLG
Page 16 of 16

Case 3:23-cv-00164-MMS   Document 48   Filed 07/02/25   Page 16 of 16