IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| BRENDA L. BOUDREAU,<br><br>    Plaintiff,<br><br>  v.<br><br>MUNICIPALITY OF ANCHORAGE, *et al.*,<br><br>    Defendants. | Case No. 3:23-cv-00164-MMS<br><br>**DECISION AND ORDER GRANTING MOTION TO DISMISS OFFICERS [44]** |

  Before the Court is a motion to dismiss Defendants Sgt. Marvin Weinrick, Jr, Officer Christopher Tyler Hall, Officer Kaden Pohl, and Officer Dustin Boynton (the "Officers") in this matter.[1] These are the remaining Defendants, as the others have otherwise been dismissed. The parties did not request oral argument, and the Court does not believe that one would assist in the resolution of this matter. For the reasons stated below, the Court agrees with the Defendants and **GRANTS** their motion to dismiss.

    I.  FACTUAL BACKGROUND

  Ms. Boudreau alleges that on February 19, 2023, she was lawfully operating her vehicle when she was unconstitutionally stopped by Anchorage Police Department ("APD").[2] She alleges, basing her knowledge off of a Computer-Aided Dispatch Report ("CAD Report") that she attached to her Third Amended Complaint, that Officer Tyler

---

[1] Dkt. 44.
[2] Dkt. 37 at ¶ 6.

Hall lacked probable cause to detain her.[3] She claims that Officer Hall inaccurately described her as failing to identify herself and that the CAD Report reflected that he observed "NOTHING OTHER THAN OBS PLATE AND 10-32 REFUSING TO ID."[4] The situation escalated, with additional law enforcement arriving, the vehicle's window being broken by an officer, Plaintiff being removed from the vehicle by force, the vehicle being impounded, and Ms. Boudreau being searched, handcuffed, and directed to sign a document against her will.[5] She claims that the search of her person including "lifting her dress all the way up, exposing her" undergarments, "which felt like sexual molestation to her" in part due to "one officer [ ] smirking and deriving pleasure from it[.]"[6] She alleges that on April 10, 2023, the criminal charge connected with this occurrence was dismissed, which to her amounted to an "acknowledg[ement of] the lack of legitimate grounds for the initial encounter."[7] Despite this, the Municipality pursued tickets related to this event.[8]

Plaintiff's most recent complaint names the Municipality of Anchorage and the above-listed officers with one count for unreasonable seizure in violation of the Fourth Amendment, and one count of using excessive force.[9] Plaintiff listed additional counts solely against the Municipality, but that defendant has been previously dismissed with prejudice.[10]

---

[3] *Id.* at ¶ 7; *see also*, 37-1.
[4] Dkt. 37 at ¶ 7b–7c.
[5] *Id.* at ¶¶ 9–13.
[6] *Id.* at page 4.
[7] *Id.* at ¶ 14.
[8] *Id.* at ¶ 15.
[9] *Id.* at ¶¶ 18–20 & ¶¶ 25–30.
[10] Dkt. 38.

## II. MOTION PRESENTED

The Officers moved to dismiss the claims made against them.[11] The Officers argue that Ms. Boudreau's claims fail on the merits, arguing that law enforcement needed only reasonable suspicion to engage Ms. Boudreau, that her having snow obstructing her license plate constituted at least reasonable suspicion, that Plaintiff was required to show identification at the traffic stop, that Boudreau's arrest was supported by probable cause and that such arrest was effectuated with appropriate force, that the search of her person was necessary pursuant to an arrest, and that the document that she signed was simply informing her of the conditions of her release on her own recognizance (such as agreeing to appear in court on this matter), and that Ms. Boudreau has not alleged a pattern of excessive force.[12] The Officers also argued that they are entitled to qualified immunity.[13]

Ms. Boudreau responded in opposition.[14] She reasons that the dismissal of the charges constitutes conclusive evidence that the initial stop was without probable cause, that the CAD Report demonstrates that there was a lack of reasonable suspicion, that providing identification at a traffic stop is not required under Alaska law because she was parked instead of driving, that the Officers' conduct in this occurrence is sufficient to establish a pattern of excessive force, that her arrest and thereby the search of her person

---

[11] Dkt. 44.
[12] *Id.* at 1–15.
[13] *Id.* at 16–18.
[14] Dkt. 47.

was unlawful, that qualified immunity was inapplicable, that there is municipal liability under *Monell*,[15] and that there remain factual disputes rendering dismissal improper.[16]

The Officers replied in further support of their motion.[17] They argued that Plaintiff's *Monell* claim is precluded by a previous order, that Plaintiff gives undue weight to her municipal violation being dismissed, that Ms. Boudreau was required to show her identification, and her reference to being parked contradicts her prior representations to the Court.[18]

## III. DISCUSSION

The Court has reviewed the parties' filings and considered their arguments. While Ms. Boudreau is understandably upset by her interaction with law enforcement beginning on February 19, 2023, the Court does not find support in her Third Amended Complaint for her position that she has stated claims upon the Court could grant relief, even assuming that she is able to establish the facts alleged. The Constitution requires only reasonable suspicion, rather than probable cause, for law enforcement to have detained her, and the obstruction of her license plate constituted reasonable suspicion. Her refusal to provide identification further escalated the matter, resulting in her probable cause arrest. Arresting resisting or non-compliant suspects unfortunately is difficult and law enforcement may need to use some force — such as breaking a vehicle's window and pulling the occupant

---

[15] Plaintiff's *Monell* claim was solely against the Municipality of Anchorage and has been dismissed with prejudice. *See*, Dkt. 38. The Court will not repeat the merits of this order.
[16] *See generally*, Dkt. 47.
[17] Dkt. 48.
[18] *See generally*, *id.*

out. The dismissal of her charge by itself does not amount to an admission to the unlawfulness of the traffic stop, and requiring an individual to agree to conditions of release before releasing them on their own recognizance is neither suspect nor actionable. Further, suing individuals such as these Officers requires showing that they violated clearly established law, and Ms. Boudreau has not met that burden.

### a. On the Merits.

Federal Rule of Civil Procedure 12(b)(6) empowers a federal court to dismiss a civil action "for failure to state a claim upon which relief can be granted[.]"[19] When determining whether a claim has been stated, the Court accepts as true all well-pleaded factual allegations and construes them in the light most favorable to the plaintiff.[20] However, it should not consider legal conclusions, such as "the defendant committed fraud," to determine whether, even if the complaining party could establish the allegations as true, they amount to a viable claim.[21] Ms. Boudreau need not have presented detailed allegations, but she must demonstrate her entitlement to relief beyond simply reciting the elements of causes of action.[22] In more colloquial terms, a Rule 12(b)(6) motion asks, "so, what?" in response to a complaint. Even assuming that the Plaintiff is telling the truth, which this type of motion does not concede, not all frustrations are legally actionable.

### 1. The Traffic Stop was Supported by Reasonable Suspicion.

---

[19] *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011).
[20] *See*, *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).
[21] *See*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (1955); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).
[22] *Twombly*, 556 U.S. at 555.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]"[23] "The touchstone of the Fourth Amendment is reasonableness. The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable."[24] "Brief, investigatory detentions are proper when the length and scope of the detention are justified by the circumstances giving rise to the detention."[25] For such detentions, law enforcement need only have reasonable suspicion of criminal activity.[26] Reasonable suspicion is more than a mere hunch. Rather, it is an objectively reasonable belief that criminal activity "may be afoot" "supported by articulable facts[.]" *Id.* This standard is below probable cause and "is considerably less than proof of wrongdoing by a preponderance of the evidence." *Id.*

The Officers point to three possible violations for their theory of reasonable suspicion. First, A.M.C. 9.52.040, which reads:

> No motor vehicle may be operated or parked on a street, highway or vehicular way or area within the municipality with any number, letter, or registration decal or sticker of a license plate obscured or covered by dirt or debris, a tinted or shaded cover plate, any nontransparent covering, or any coating not provided by the manufacturer of the license plate. [. . .]

Second, the Officers offer 13 A.A.C. 04.025(c), which reads: "Either a taillight or a separate light must illuminate, with a white light, the rear registration plate, so that it is clearly visible from a distance of 50 feet to the rear." The Officers also reference *Way v.*

---

[23] U.S. Const. Amend. IV.
[24] *Fla. v. Jimeno*, 500 U.S. 248, 250 (1991) (citations omitted).
[25] *United States v. Sosa-Martinez*, 187 F.3d 650 (9th Cir. 1999).
[26] *Pierce v. Multnomah Cnty., Or.*, 76 F.3d 1032, 1040 (9th Cir. 1996).

*State*, wherein the individual was stopped for a violation of A.S. 28.10.171(b), which requires a license plate to be properly fastened to the vehicle.[27]

There is nothing in the record to support the idea that Ms. Boudreau's license plate was not properly illuminated, and so this Court finds recourse to 13 A.A.C. 04.025(c), which requires that a license plate be illuminated, to be unavailing on the issue of reasonable suspicion or probable cause.

However, A.M.C. 9.52.040 appears to comprehensively prohibit any physical covering of a license plate which may obscure its legibility. As the statute references both accumulated natural material (e.g. dirt, debris) and any post-manufacturing cover or coating, it is reasonable to infer that the legislature sought to prohibit the presence of any material, either inadvertent or deliberate, that could obscure a license plate. While snow is not dirt, and perhaps not debris, it seems implausible that the Anchorage Assembly would proscribe a license plate from being covered by dirt but deem that the same license plate could be legally covered by snow.

2. Failure to Provide Identification was Required and Justified the Arrest.

Warrantless arrests require probable case.[28] Probable cause exists when the totality of the known circumstances would lead a reasonable and trustworthy person to conclude that there was a fair probability that a crime "has been or is being committed by the person

---

[27] 100 P.3d 902, 903 (Alaska Ct. App. 2004).
[28] *See*, *Michigan v. Summers*, 452 U.S. 692, 700 (1981).

being arrested."[29] Mere suspicion or a hunch is insufficient, but officers do not need to have conclusive evidence of guilt. *Id.*

Despite Plaintiff's contentions, she was required to identify herself. A.S. 28.15.131(a) required her to have her "driver's license in immediate possession at all times when driving a motor vehicle, and [. . .] present the license for inspection upon the demand of" law enforcement. Plaintiff argues that she was not driving, but rather, she was legally "parked and resting[.]"[30] However, her Third Amended Complaint alleges that she "was lawfully operating her vehicle" when the "traffic stop" occurred.[31] Not only does the plain reading of the Third Amended Complaint suggest movement, Plaintiff's response reads that law enforcement "followed and conducted illegal surveillance" of her prior to stopping her.[32]

Plaintiff does not dispute that she refused to produce her driver's license. She only argues that it was within her rights to do so. Her repeated refusal amounted to disobeying a lawful order. A.M.C. 8.30.010 ("A person commits the crime of resisting or interfering with a peace officer when [. . .] [6] The person intentionally, recklessly or knowingly disobeys the lawful orders of any public officer[.]").

### 3. Reasonable Force and Search of Plaintiff's Person.

While law enforcement's decision to use force is often justified, the use of force must be reasonable. The Constitution proscribes "unreasonable searches and seizures[,]"

---

[29] *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007).
[30] Dkt. 47 at 5.
[31] Dkt. 37 at ¶ 6.
[32] Dkt. 47 at ¶ 6.

which requires "carefully weighing 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'"[33] Courts review the totality of the circumstances, considering the information that the officers had in the moment, to determine whether the force used was reasonable.[34] "Whether a use of force was reasonable will depend on the facts of the particular case, including, but not limited to, whether the suspect posed an immediate threat to anyone, whether the suspect resisted or attempted to evade arrest, and the severity of the crime at issue."[35] The most important consideration is whether the individual posed an immediate threat to safety.[36]

Here, the Officers baldly assert that the force used was reasonable without substantive argument.[37] The Plaintiff did not dwell on this issue either, but she offered that factual disputes precluded dismissal at this time, such as "dragging through broken glass, sexual humiliation, [and] weapons drawn on passenger[.]"[38]

The latter two of these considerations do not persuade the Court. As an initial matter, Ms. Boudreau does not have standing to assert claims vicariously for the passenger. Second, Ms. Boudreau's sexual humiliation point stems from her allegation that she was "subjected [. . .] to a provocative and inappropriate search, which felt like sexual

---

[33] *Cnty. of Los Angeles, Calif. v. Mendez*, 581 U.S. 420, 427 (2017) (citing *Tennessee v. Garner,* 471 U.S. 1, 8 (1985)).
[34] *Id.* at 428.
[35] *S.R. Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019).
[36] *Id.* at 1132.
[37] Dkt. 44 at 10.
[38] Dkt. 47 at 9.

molestation to her, by lifting her dress all the way up, exposing her [undergarments] in the police cruiser headlights while one officer was smirking and deriving pleasure from it[.]"[39] Upon the arrest of an individual, law enforcement may perform a search incident to an arrest.[40] While the scope of this search is not unlimited, "[a]n officer may [search] the area within the arrestee's immediate control to look for weapons or destructible evidence."[41] This search should not be confused with the less intrusive *Terry* stop, which authorizes a less intrusive pat-down, rather than a search.

Here, the alleged search of Ms. Boudreau was incident to an arrest. Further, while the Court recognizes and is sympathetic to her argument that this was humiliating and invasive, the reality of these searches is that they often must be to ensure officer safety. Ms. Boudreau's Third Amended Complaint does not allege inappropriate contact, an unnecessary prolonging of the search, or any other allegations aside from an officer smirking during the search. While such a reaction would be unprofessional,[42] it does not rise to the level of an actionable claim. Further, while Ms. Boudreau alleged that handcuffing her "despite no resistance or threat" was excessive, her own allegations demonstrate resistance, and handcuffing an arrestee is permissible even in the absence of a current threat because it also ensures the continued safety of law enforcement.

---

[39] Dkt. 37 at page 4.
[40] *See*, *United States v. Nohara*, 3 F.3d 1239, 1243 (9th Cir. 1993).
[41] *Id.* at 1243.
[42] As a reminder, the Court takes Ms. Boudreau's allegations as true for this motion. This opinion should not be read as a finding as to any of these officers' conduct.

As to the breaking the vehicle's window and the "Officers pull[ing] her through the broken glass,"[43] the Court is reluctant to find that she has failed to state a claim as a matter of law. For instance, in *Coles v. Eagle*, the Ninth Circuit found upon its review of a district court's granting of a motion for summary judgment that breaking a vehicle window, dragging the suspect out through the window, and kicking the suspect in the upper torso amounted to a genuine issue of material fact even though the individual was suspected of stealing the vehicle and there was concern regarding the placement of suspect's hands.[44] While that case presented more egregious facts, the Court finds disposition of this matter more appropriate under qualified immunity.

4. <u>Signing Release Conditions.</u>

The Officers argue that Ms. Boudreau signing the order and condition of release on her own recognizance was not coercive.[45] They offer Dkt. 31-2, an exhibit to a previous motion by the Municipality, and request judicial notice.[46] The Court will consider this document because Ms. Boudreau's complaint refers to it, she does not appear to dispute the authenticity of it, and the Court otherwise finds this claim to not be properly pleaded. This document noticed Ms. Boudreau that she was released pending her agreement to appear at a future court hearing and to not contact potential victims.[47] Requiring the Plaintiff to sign a standard form that did not waive her substantive rights pursuant to the

---

[43] Dkt. 37 at 4.
[44] 704 F.3d 624, 628–29 (9th Cir. 2012).
[45] Dkt. 44 at 14–15.
[46] *Id.* at 14.
[47] Dkt. 31-2.

Amended Second Temporarily Presiding Judges Administrative Order Establishing a Statewide Bail Schedule[48] does not appear coercive to the Court.

Nevertheless, while Ms. Boudreau references being coerced to sign a document, her Third Amended Complaint does not appear to be part of her counts against the Officers or even the dismissed counts against the Municipality. Accordingly, though it appears that if Ms. Boudreau had asserted a claim for being required to sign her conditions of release before being released that it would have been futile, she did not do so here. As such, the Court need not dismiss a claim not pleaded, but it also finds that amendment to include it would be futile.

### b. Qualified Immunity Sheilds the Officers from the Excessive Force Claim.

Stating a claim, however, does not end the inquiry. The Officers have argued that they are shielded by qualified immunity. Qualified immunity is not solely for liability, but rather, it is also immunity from suit itself.[49] The Supreme Court has emphasized that even "*pretrial* matters [. . .] can be peculiarly disruptive of effective government."[50] As such, this issue should be resolved "at the earliest possible stage in litigation."[51]

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[52] While this

---

[48] Publicly accessible at https://courts.alaska.gov/covid19/docs/statewide-pjo-bail2.pdf.
[49] *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996).
[50] *Id.* (internal citation omitted).
[51] *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).
[52] *Id.* at 231 (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).

inquiry "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate."[53] The Supreme Court "has repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality."[54] In other words, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"[55] In the context of the use of excessive force, law enforcement is protected by "qualified immunity unless existing precedent 'squarely governs' the specific facts at issue."[56]

Here, while construing Ms. Boudreau's excessive force claim may plausibly lead to a cognizable claim, she has not presented, nor has the Court found, sufficiently analogous controlling law that would put the Officers here on notice that their actions violated Ms. Boudreau's rights. As the Court has found, the initial interaction with Ms. Boudreau was lawful because it was supported by probable cause, she was required and refused to show identification, and law enforcement was entitled to arrest her for disobeying a lawful order. While physically dragging her out of the vehicle over the broken glass may have possibly been excessive for situation, the Court has not been presented with, nor found, a squarely

---

[53] *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (citation omitted).
[54] *Id.* at 104 (internal citations omitted).
[55] *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).
[56] *Kisela*, 584 U.S. at 104–05 (citing *Mullenix*, 577 U.S. at 13).

governing precedent that clearly established this conduct as unlawful beyond debate. Accordingly, the Court finds the Officers here to be shielded by qualified immunity.[57]

### c. The Claims against the Officers are Dismissed with Prejudice.

If a court dismisses a complaint under Rule 12(b)(6), it must then decide whether to grant leave to amend. Federal Rule of Civil Procedure 15 provides that courts should "freely give leave [to amend] when justice so requires," and the Ninth Circuit has held that "this policy is to be applied with extreme liberality."[58] Amendment may be considered futile when the claims lack a cognizable legal basis or when "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense."[59] Further, a plaintiff's repeated failure to cure a complaint's deficiencies constitutes "a strong indication that the [plaintiff has] no additional facts to plead" and that "any attempt to amend would be futile."[60]

Here, neither the Officers nor Ms. Boudreau briefed whether leave to amend should be permitted. However, the Plaintiff's claims rely on fundamental misunderstandings of

---

[57] While the Court cited to *Coles* above, it does not believe that it put the Officers on notice. First, the force there — dragging the suspect through the broken window itself and then kicking the suspect's torso — was more extreme. Here, the allegations at most demonstrate that she was pulled out of the vehicle after the window was broken after she resisted by moving over to the passenger's seat from the driver's seat.
[58] Fed. R. Civ. P. 15(a)(2); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (citation omitted).
[59] *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (internal citation omitted).
[60] *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (internal quotation marks and citation omitted); *see also Williams v. California*, 764 F.3d 1002, 1018–19 (9th Cir. 2014) ("The fact that Plaintiffs have already had two chances to articulate clear and lucid theories underlying their claims, and they failed to do so, demonstrates that amendment would be futile.").

the law, which was likely the cause for the escalation of the situation on February 19, 2023. Law enforcement had reasonable suspicion to detain her, and she refused to follow a lawful order. Despite law enforcement attempting to speak with Ms. Boudreau for approximately fifteen minutes before arresting her,[61] she continued to refuse to comply with lawful orders. While this event was certainly stressful, embarrassing, and even traumatic, the core of Plaintiff's complaint is that she was arrested for violating the law. Considering that this is her fourth complaint, that she has had over two years to litigate this case, the ultimate futility of her theory of this case, and the public's interest in the Officers being able to continue carrying out their duties without the burdens of litigation, the Court finds that Plaintiff should not be given leave to amend.

### IV. CONCLUSION AND ORDER

For the reasons stated above, **IT IS THEREFORE ORDERED THAT**:

1) the Motion to Dismiss Officers Docket 44 is **GRANTED**;

2) the claims against the Defendants Sgt. Marvin Weinrick, Jr, Officer Christopher Tyler Hall, Officer Kaden Pohl, and Officer Dustin Boynton are **DISMISSED with prejudice**;

3) the Clerk of Court shall close this case and prepare a judgment of dismissal.

DATED this 27th day of August, 2025, at Anchorage, Alaska.

_____
MATTHEW M. SCOBLE
CHIEF U.S. MAGISTRATE JUDGE

---

[61] Dkt. 37-1 (attachment to Third Amended Complaint). Plaintiff extensively relies on this report, and the Officers do not challenge its authenticity. The Court considers it incorporated in the Third Amended Complaint.